# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| DALE LOCKLAIR and JASON LOCKLAIR, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 2:18-cv-3514-DCN |
| vs. | ) |
| | ) **ORDER** |
| CONAIR CORPORATION, INC., | ) |
| | ) |
| Defendant. | ) |

The following matter is before the court on defendant Conair Corporation's ("Conair") motion to dismiss, ECF No. 13, and Conair's motion to transfer case, ECF No. 16. Per the parties' agreement, the motion to dismiss is moot, and for the reasons set forth below, the court denies the motion to transfer.

## I. BACKGROUND

This is a product liability case. Plaintiff Dale Locklair ("Dale") purchased a Cuisinart Electronic Pressure Cooker CPS-600 Series ("Pressure Cooker") from a Walmart in South Carolina. The Pressure Cooker is designed, manufactured, warranted, marketed, advertised, and sold by Conair, who uses the brand name "Cuisinart." When selecting the Pressure Cooker for purchase, Dale allegedly relied on the representations that the Pressure Cooker was safe to use and that the lid would remain locked while the Pressure Cooker was pressurized. Dale also allegedly read the Pressure Cooker's Owner's Manual several times before using the Pressure Cooker for the first time and subsequently used the Pressure Cooker successfully on a number of occasions.

On June 19, 2016, Dale used his Pressure Cooker to boil water to prepare risotto. The complaint alleges that Dale used the Pressure Cooker properly and waited until the

1

Pressure Cooker signaled that the pressure had dropped and that the lid of the Pressure Cooker was safe to open. However, the Locklairs allege that the signal was wrong because when Dale began to remove the lid, the Pressure Cooker exploded and sprayed Dale and his son, plaintiff Jason Locklair ("Jason") (collectively, "the Locklairs"), with hot water, oil, and other ingredients. As a result, the Locklairs suffered burns on their bodies.

The Locklairs filed their complaint on December 19, 2018 alleging breach of warranty, negligence, and strict liability. Conair filed its motion to dismiss and its motion to transfer the case on February 6, 2019. ECF Nos. 13, 16. On February 20, 2019, the Locklairs filed an amended complaint and responses to both motions. ECF Nos. 19–21. The amended complaint levies claims for breach of express warranty, breach of implied warranty, negligence, and strict liability. Conair replied to both responses on February 27, 2019. ECF Nos. 24, 25. Both parties agree that since the Locklairs filed their amended complaint, Conair's motion to dismiss is now moot; therefore, the court only considers the motion to transfer the case.

## II. DISCUSSION

Conair asks this court to transfer the instant action to the District of Connecticut, where Conair is currently defending an action that may become a class action and alleges the same types of defects in the Pressure Cooker, <u>Wicklund v. Conair Corporation</u>, No. 3:18-cv-01284-MPS ("the Wicklund action").[1] Pursuant to 28 U.S.C. § 1404(a), "[f]or

---

[1] Conair also filed requests for judicial notice, asking the court to take judicial notice of the allegations and docket of the Wicklund action. ECF Nos. 17, 26-1. Conair attached the complaint and docket of the Wicklund action to these requests. Because "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a

the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The burden is on the movant to show that transfer pursuant to Section 1404(a) is proper." Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., 928 F. Supp. 2d 863, 867 (E.D. Va. 2013). "'Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge.'" Herring v. LaPolla Indus., Inc., 2013 WL 12148849, at *3 (D.S.C. Oct. 7, 2013) (quoting Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991)). In exercising this discretion, courts consider: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). "Unless these factors weigh strongly in favor of the defendant, the plaintiff's chosen venue should rarely be disturbed." HDMG Entm't, LLC v. Certain Underwriters at Lloyd's of London Subscribing to Policy No. L009082, 2017 WL 367967, at *4 (D.S.C. Jan. 25, 2017) (internal quotations omitted).

Here, Conair concedes that the Locklairs' choice of venue should be afforded substantial weight because the Locklairs are residents of South Carolina. However, Conair argues that the convenience of the witnesses and parties as well as the interests of justice weigh in favor of transferring the case to the District of Connecticut. The court disagrees and denies the motion to transfer the case.

---

direct relation to matters at issue," Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (citation omitted), the court takes judicial notice of the Wicklund action complaint and docket.

### A. Convenience of Witnesses and Parties

First, Conair argues that the District of Connecticut is a more convenient forum because all of Conair's witnesses are in Connecticut, where Conair has an office. However, as the Locklairs argue, all of the Locklairs' witnesses are in South Carolina. As such, one party's witnesses would be inconvenienced regardless of whether the case was heard in South Carolina or Connecticut, making transfer generally inappropriate. See Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1258 (E.D. Va. 1988) ("In many instances, the original forum is convenient for plaintiff's witness[es], but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum. Under these circumstances, transfer is inappropriate because the result of transfer would serve only to shift the balance of inconvenience." (internal quotations omitted)).

When confronted with a scenario in which one party's witnesses are in one state and the other party's witnesses are in another state, courts distinguish between party witnesses and non-party witnesses to better understand the convenience of the witnesses. HDMG Entm't, LLC, 2017 WL 367967, at *5. Party witnesses are presumed to be more willing to testify in a different forum because they are closely aligned with the party, whereas non-party witnesses are not given such presumption. Id. Therefore, greater weight is afforded to the convenience of non-party witnesses rather than party witnesses. Id. Party witnesses include employees of a party. See Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.").

Both parties submitted affidavits identifying the witnesses they expect to call. Conair's potential witnesses are all employees of Conair. Close Decl. ¶¶ 5–7. Therefore, Conair's witnesses are party witnesses, and the court can presume that Conair's witnesses will be more willing to testify in South Carolina. The convenience of employee-witnesses can still be afforded some weight, especially when countered with no evidence about the convenience of non-party witnesses. Realson v. Univ. Med. Pharm. Corp., 2010 WL 1838911, at *5 (D.S.C. 2010). But here, the Locklairs have presented evidence about the convenience of their non-party witnesses. The Locklairs plan on calling as witnesses their doctors and various medical personnel who treated their injuries. Locklair Decl. ¶¶ 5–7. These doctors, who would be more than 100 miles away from Connecticut and therefore outside of the Connecticut court's subpoena power, cannot be presumed to be willing to testify should the case take place in Connecticut.

As for the convenience of the parties, Conair argues that it would be inconvenient for it to litigate in South Carolina, while the Locklairs argue that it would be inconvenient for them to litigate in Connecticut. Both parties are located in their respective states and have evidence in their respective states. As a result, a transfer "would simply shift the inconvenience from one party to another," making transfer improper. Realson, 2010 WL 1838911, at *2. Therefore, the court finds that Conair has not demonstrated that the convenience of the witnesses and parties weighs in favor of transfer.

### B. Interests of Justice

Conair also argues that it is in the interest of justice to transfer the case to the District of Connecticut because of the Wicklund action, which may become a class action and brings similar claims to the Locklairs' claims. Conair relies on two cases in arguing

that a pending class action warrants transfer of a case similar to the class action. First, in Realson, the court transferred the case to the Central District of California in part because there was a pending nationwide class action in that court. 2010 WL 1838911 at *6. The court found that transferring the case to California "would promote judicial economy and prevent inconsistent results." Id. Similarly, in Byerson v. Equifax Info. Servs., LLC, the court transferred the case to the District of South Carolina, where a related class action was filed. 467 F. Supp. 2d 627, 637 (E.D. Va. 2006). The court held that even when the defendants failed to meet their burden on the other § 1404 factors, "consideration of systemic integrity and fairness outweigh the other factors in this class action," warranting transfer. Id.

However, there is an important distinction between these two cases and the instant case—in those cases, the plaintiffs were attempting to bring nationwide class actions, and here, the Locklairs are not. Indeed, the Realson and Byerson courts discuss the unique considerations that arise when there are two related nationwide class actions ongoing at the same time and how those considerations weigh in favor of transfer. The court in Byerson explained that it is "preferable that one court assess the factors that point to factual and legal overlap and sort out the class action issues that will arise in each of the related actions" so that "the rights of all potential class members can be fully protected and the responsibility of defendants vis a vis the putative class members can be properly identified and allocated." 467 F. Supp. 2d at 636. The court was concerned about multiple nationwide class actions resulting in consumers' claims "fall[ing] through the cracks that may exist between the classes that ultimately are certified." Id. at 636. Because of the unique considerations that arise with the potential for two similar class

actions, the court held that "[t]he interest of justice weighs particularly heavily here because class actions so significantly implicate the rights of persons who are not actually before the court." Id. at 637. Similarly, the Realson court explained that transfer was appropriate in part because the purported class members in the pending class action in California overlapped with the purported class members named by the plaintiff. 2010 WL 1838911 at *6.

Here, the Locklairs are not attempting to bring a nationwide class action. Instead, they are seeking to recover for personal injuries they individually suffered. The Locklairs' lawsuit would be the equivalent to them opting out of the Wicklund action, should it be certified as a class action,[2] and pursuing individual litigation. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 813 (1985) (explaining that a plaintiff can opt out of a class action if he wishes to litigate the case on his own). In such a scenario, the court cannot force an opted-out plaintiff to participate in a class action, and that is essentially what Conair is asking the court to do here. As such, this factor does not weigh in favor of transfer. Finding no factor in favor of transferring the case to the District of Connecticut, the court denies the motion to transfer.

---

[2] According to the Wicklund action docket, any motion seeking to certify a class is not due until June 15, 2019, and it does not appear that the court has certified a class yet. ECF No. 26-2.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**March 22, 2019**
**Charleston, South Carolina**